IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN GERARD STEGH, | CASE NO. 1:22-cv-1625 |
| Plaintiff, | DISTRICT JUDGE SARA LIOI |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Stephen Gerard Stegh filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In July 2020, Stegh filed an application for Disability Insurance Benefits alleging a disability onset date of March 23, 2020,[1] and claiming he was disabled due to Crohn's disease, spinal stenosis, stage three renal failure,

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

chronic kidney stones, high blood pressure, sleep apnea, chronic pain and swelling, pinched nerves on the left side of his neck and back, bulging discs, and prediabetes. Tr. 138, 162. The Social Security Administration denied Stegh's application and his motion for reconsideration. Tr. 59, 70. Stegh then requested a hearing before an Administrative Law Judge (ALJ). Tr. 88.

In April 2021, an ALJ held a hearing. Tr. 34–58. In August 2021, the ALJ issued a written decision finding that Stegh was not disabled. Tr. 13–29. The ALJ's decision became final on July 15, 2022, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

In his Complaint filed on September 13, 2022, Stegh asserts the following assignments of error:

> 1.  The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Stegh's symptoms precluded him from engaging in substantial gainful activity at the light level of exertion on a full-time and sustained basis.
>
> 2.  The ALJ erred in that substantial evidence did not support the RFC finding that Stegh could perform work at the light level of exertion.

Doc. 9, at 1.

**Evidence**

*1.    Personal and vocational evidence*

Stegh was born in 1969 and was 50 years old on his alleged disability onset date. Tr. 28. He completed twelfth grade and attended some college. Tr.

38. Stegh last worked in March 2020 as a certified medical technician. Tr. 39–41.

### 2.    *Medical evidence*[2]

In June 2018, Stegh saw his gastroenterologist to discuss a flare-up of Stegh's Crohn's disease. Tr. 257.  In August, Stegh reported that his symptoms were getting worse. Tr. 260. Stegh said that he had cramps, pain, bloating, and vomiting, and that he was "still passing kidney stones." Tr. 260.

In February 2019, Stegh saw a doctor for pain in both knees. Tr. 418. The doctor assessed "mechanical pain of left knee" and primary osteoarthritis of both knees. Tr. 419.

Also in February 2019, a CT scan of Stegh's abdomen showed no active Crohn's disease. Tr. 263.

In March 2019, Stegh saw his neurologist for an EMG of Stegh's left arm and left leg. Tr. 274. The EMG showed chronic, moderate lumbosacral and cervical radiculopathy at levels C6, C7, L5, and S1.[3] Tr. 274, 277.

---

[2]    The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

[3]    Vertebrae in a person's spine are given letter and number designations according to their location. The neck—the cervical spine—has seven vertebrae designated as C1 through C7. *See* https://www.spine-health.com/conditions/spine-anatomy/vertebrae-vertebral-column (last visited May 1, 2023). The twelve vertebrae compromising the upper spine—the thoracic spine—are labeled at T1 through T12. *Id*. The five in the lower spine—the lumbar spine— are L1 through L5. *Id*. And the five vertebrae at the bottom of the spine—in the sacrum—are labeled as S1 through S5. https://www.spine-health.com/conditions/spine-anatomy/sacrum-sacral-region (last visited May 1, 2023).

Also in March 2019, Stegh saw Jamal Azem, M.D. Tr. 369. Dr. Azem diagnosed Stegh with moderate chronic kidney disease, stage three. Tr. 370.

In October 2019, Stegh saw his urologist. Tr. 284. Stegh had a history of kidney stones. Tr. 284. He had only one kidney and reported doing well. Tr. 284. He also reported difficulty sleeping, leg swelling and edema, abdominal pain, nausea and vomiting, constipation, diarrhea, colitis, Crohn's disease, chronic pain, arthritis, and back pain. Tr. 285. An x-ray showed no abnormal calcifications in the region of Stegh's kidney and four "unchanged rounded calcifications in the right mid abdomen, identified as early as [February] 2019." Tr. 293.

In February 2020, Stegh saw Robert Znidarsic, M.D., for tailbone pain. Tr. 389. Stegh's pain started six months before the appointment and caused difficulty sitting. Tr. 389. Stegh also reported lower back pain that radiated into his left leg. Tr. 389. He denied difficulties performing his activities of daily living. Tr. 389. Dr. Znidarsic's exam findings showed that Stegh had minimal tenderness on palpation of his spine, full range of motion of his back, normal strength, and a negative straight leg raising test.[4] Tr. 391. A lumbar MRI in March showed severe spinal canal stenosis and intervertebral foraminal encroachment at L3-L4, with possible slight worsening of the stenosis

---

[4]     In a straight leg-raising test, the patient lies down, fully extends the knee, and lifts the leg. *See* Dorland's Illustrated Medical Dictionary, 32nd Edition, 2012, at 1900. Leg pain when raising the leg 30–90 degrees is a positive test and indicates lumbar radiculopathy. *Id*.

compared to Stegh's prior MRI from December 2017. Tr. 344–45. The MRI also showed mild facet arthropathy at L4-L5. Tr. 345.

In mid-April 2020, Stegh had an x-ray of his abdomen, which showed four rounded calcified densities in the right lower quadrant of his bowel and no kidney stones. Tr. 294.

Later that month, Stegh had Crohn's-related surgery—an exploratory laparotomy and "extensive lysis of adhesions and redo ileocolic resection." Tr. 304, 307. The notes indicate that Stegh was first diagnosed with Crohn's disease in 1990 and had developed a stricture that the surgeon removed. Tr. 304. Stegh was discharged from the hospital five days later in satisfactory condition. Tr. 307.

In mid-May 2020, Stegh had a surgical follow-up appointment. Tr. 322. Stegh was "doing well," had a good appetite, and was having bowel movements twice a day. Tr. 322. At a follow-up telephonic visit in late May, Stegh said that he was doing well after surgery. Tr. 319. He was "still sore," but eating, drinking, and moving his bowels. Tr. 319.

In June 2020, Stegh saw Dr. Znidarsic. Tr. 380. Stegh reported that after his surgery, he developed right shoulder pain with weakness. Tr. 380. He denied abdominal pain or a change in bowel habits. Tr. 382. Dr. Znidarsic commented that Stegh appeared well and was in no acute distress. Tr. 382. Stegh had right shoulder weakness but no acromioclavicular joint tenderness. Tr. 382. A Hawkins maneuver test for shoulder impingement was negative. Tr.

382. Dr. Znidarsic assessed Stegh with right shoulder pain and rotator cuff disorder and ordered imaging. Tr. 382–83. A subsequent right shoulder x-ray showed mild to moderate degenerative changes. Tr. 403.

Later in June 2020, Stegh had another surgical follow-up appointment and reported "doing better," but with intermittent "[right lower quadrant]" pain. Tr. 316. Stegh denied bloating and stated that he was moving his bowels one to two times a day. Tr. 316. He didn't want to return to work "until all this [was] sorted out." Tr. 316. He denied constipation, nausea, diarrhea, and vomiting. Tr. 316. Upon exam, Stegh was in no acute distress and "well appearing and well nourished." Tr. 318. His abdomen was soft with mild tenderness. Tr. 318. Stegh's surgical incision was clean, dry, and intact. Tr. 308.

In August 2020, Stegh saw Dr. Azem for chronic kidney disease. Tr. 366. Stegh reported that he felt "ok [with] no complaints" since his bowel surgery. Tr. 366. Dr. Azem's exam findings showed that Stegh was in no acute distress. Tr. 367. Stegh had a full range of motion in his neck and normal abdominal findings. Tr. 367. Dr. Azem diagnosed Stegh with mild chronic kidney disease, stage two. Tr. 367.

In October 2020, Stegh followed up with his urologist. Tr. 288. Stegh reported back pain but denied flank pain, groin pain, nausea, vomiting, fever, and chills. Tr. 288. Upon exam, Stegh had no tenderness or rigidity in his abdomen and a normal gait and station. Tr. 290. An abdominal x-ray showed

"pelvic calcifications appearing to be most likely vascular and calcification [on the] right side of the abdomen[.]" Tr. 295. The doctor diagnosed Stegh with a calculus of the right kidney that was stable. Tr. 290. He advised Stegh to remain on his medication, Allopurinol, and a calcium supplement. Tr. 290. The doctor told Stegh to return in one year for another x-ray. Tr. 290.

In January 2021, Stegh had a telephonic visit with Dr. Znidarsic. Tr. 430. Stegh said that he had back pain, his legs were numb, and he had a hard time walking. Tr. 430. He reported that his lower back pain radiated into his legs. Tr. 431. The pain was exacerbated by walking, bending, and sitting. Tr. 431. Stegh denied difficulties performing his activities of daily living. Tr. 430. Dr. Znidarsic assessed Stegh with lumbar spinal stenosis and prediabetes. Tr. 433. He continued Stegh's medications and encouraged Stegh to exercise. Tr. 433.

In May 2021, Stegh saw Kevin Bailey, D.O., for a consultive exam. Tr. 436–452. Stegh's chief complaints were Crohn's disease, renal failure, lower back and leg pain, and right shoulder pain. Tr. 436. Stegh said that he could sit for 10 minutes, stand for 10 minutes, walk for 10 minutes, and lift 15 pounds. Tr. 437. Stegh's back and leg symptoms started more than five years before the exam. Tr. 437. Stegh had a 30-year history of Crohn's disease and he wasn't on dialysis for his chronic kidney disease. Tr. 437.

Dr. Bailey's exam findings showed that Stegh was in no acute distress and his abdominal exam was normal—soft, non-tender, and non-distended,

with normally active bowel sounds. Tr. 438. Stegh had no balance problems but walked with an antalgic gait pattern. Tr. 439. He had diffusely diminished sensation in his left leg and positive straight leg raise testing bilaterally. Tr. 439. Stegh could lift, carry, and handle "light objects." Tr. 439. He couldn't "squat and rise from that position with ease." Tr. 439. He could rise from a seated position without assistance and had no difficulty getting on and off the exam table. Tr. 439. Stegh had no spinal tenderness. Tr. 440. His strength was "slightly decreased diffusely but exertion and effort w[ere] poor throughout entire exam." Tr. 440. Stegh's range of motion was within normal limits except for a decreased range of motion in Stegh's right shoulder and cervical spine. Tr. 440. Stegh stated that he performed his activities of daily living without difficulty. Tr. 440. Dr. Bailey concluded that Stegh could sit for 10 minutes, stand for 10 minutes, walk for 10 minutes, and lift over 15 pounds. Tr. 440. He wrote that Stegh's "pain and decreased motion in shoulder and neck does appear to limit to him physically." Tr. 440. Dr. Bailey concluded that Stegh's medical conditions "seem well controlled on current medications and there [were] no acute symptoms that would suggest otherwise." Tr. 440.

Dr. Bailey also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" on Stegh's behalf. Tr. 447. Dr. Bailey opined that Stegh could occasionally lift or carry up to 10 pounds but never lift or carry more than that. Tr. 447. Stegh could sit and stand for 10 minutes at a time and for no more than three hours total in a day. Tr. 448. He could walk

8

for 10 minutes at a time and for no more than two hours total in a day. Tr. 448. Stegh could occasionally reach overhead with his right arm but never with his left arm. Tr. 448. Stegh could frequently reach in all other directions with both arms and frequently handle, finger, feel, push, and pull. Tr. 449. Dr. Bailey wrote that Stegh could occasionally operate foot controls, climb ramps and stairs, and balance. Tr. 449–50. Stegh could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. Tr. 450. Stegh could tolerate occasional exposure to unprotected heights, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. Tr. 451. He could have frequent exposure to moving mechanical parts and could frequently operate a motor vehicle. Tr. 451.

### 3. *State agency opinions*[5]

In September 2020, Gerald Klyop, M.D., reviewed Stegh's record and assessed Stegh's residual functional capacity (RFC).[6] Dr. Klyop found that

---

[5]    When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[6]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

Stegh could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. Tr. 62. Stegh could sit, stand, and walk for about six hours in an eight-hour workday. Tr. 62. He had postural limitations but no environmental restrictions. Tr. 63. In December 2020, Dimitri Teague, M.D., reviewed Stegh's record and adopted Dr. Kylop's findings. Tr. 67–68.

### 4.    *Hearing testimony*

Stegh, who was represented by counsel, testified at the telephonic administrative hearing. Stegh stated that he has a driver's license and has no issues driving. Tr. 39.

When asked why he couldn't work, Stegh listed his health conditions. Tr. 41. He has stage three kidney failure "only a couple stages away from dialysis." Tr. 41. He is prediabetic. Tr. 41. Stegh passes kidney stones "all the time," which is one of the reasons why he lost one of his kidneys. Tr. 41. His remaining kidney isn't working properly. Tr. 41. Stegh has spinal stenosis and walks with a limp on the left side. Tr. 41. He has pain and numbness in his legs, hands, and feet. Tr. 41. He has Crohn's disease—he's had a "couple surgeries, … intestines taken out." Tr. 41. All the time, Stegh experiences bloating, diarrhea, and abdominal pain. Tr. 41. He goes to the bathroom eight to ten times a day. Tr. 42. He "think[s] the next step is probably going to be a colostomy bag[.]" Tr. 42. Stegh has arthritis all over his body and "pretty bad" sleep apnea. Tr. 42. He has a hard time walking, sitting, or standing for any length of time. Tr. 42. His hands "shake some." Tr. 42. When Stegh was

working, he "t[ook] off more work than [he]'d been there practically." Tr. 42. He takes 18 pills a day, which makes him tired, affects his stomach, and prevents him from doing things he used to enjoy doing. Tr. 42. Stegh's spine doctor wants to perform surgery because of Stegh's spinal stenosis. Tr. 42. Stegh sees five or six doctors and needs to see more. Tr. 42.

When asked how many days a month he missed work when he was regularly missing work, Stegh estimated that he left work early seven or eight times a month because of his Crohn's disease. Tr. 43. Also, he was on his feet constantly, lifting heavy objects, and it was hard to do that while passing kidney stones. Tr. 39–40, 43–44. Sometimes he would take extra breaks to go to the bathroom. Tr. 44. When asked how much he could lift and carry at the time of the hearing, Stegh said that he hasn't lifted anything "relatively heavy at all" and lifts "everyday household objects, light stuff." Tr. 44. When asked how long he could be on his feet, Stegh answered, "not long." Tr. 45. When he goes shopping with his wife, he walks around for maybe 10 minutes and then he has to sit down. Tr. 45.

When asked what treatment he received for his back and legs issues, Stegh said that he hasn't seen doctors lately because he doesn't have insurance. Tr. 45–46. His last appointment with the doctor who treats his back issues was about four months before the hearing. Tr. 46. When asked if he still had issues with his right shoulder, Stegh said that he has pain and needs to get it "checked out." Tr. 47. He has a hard time reaching overhead with his right arm. Tr. 50.

He is supposed to have an MRI to see if anything is torn. Tr. 47. When asked if he uses a cane to support himself, Stegh said that he doesn't and explained that he uses things like door handles and countertops to support himself. Tr. 47.

The ALJ discussed with the vocational expert Stegh's past relevant work as a critical care technician. Tr. 52. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Stegh could perform Stegh's past work or any other work if the individual had the limitations that the ALJ described. Tr. 52–53. The vocational expert answered that such an individual could not perform Stegh's past work but could perform other jobs in the national economy. Tr. 52–53. After the hearing, the ALJ submitted interrogatories to the vocational expert, asking whether a hypothetical individual with the limitations assessed in the ALJ's RFC determination, described below, could perform Stegh's past work or any other work. Tr. 238–40. The vocational expert answered that such an individual couldn't perform Stegh's past work but could perform the following jobs in the national economy: office helper or clerical assistant, parking lot attendant, and cafeteria attendant. Tr. 240.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.  The claimant has not engaged in substantial gainful activity since March 23, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: Crohn's disease with bowel stricture; status-post redo ileocolic resection and removal lysis of adhesions; right rotator cuff disorder; osteoarthritis of the right shoulder; chronic kidney disease; absence of the left kidney; osteoarthritis of bilateral knees; radiculopathy of the cervical and lumbar spine; and stenosis of the lumbar and lumbosacral spine (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps, and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, and crawl; never crouch; frequently reach on the right; frequently use bilateral foot controls; occasionally be exposed to unprotected heights; and frequently be exposed to moving mechanical parts and operate a motor vehicle.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born [i]n … 1969, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

13

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2020, through the date of this decision (20 CFR 404.1520(g)).

Tr. 19–29.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.     Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

14

2.     Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.     Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.     What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.     Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

**Discussion**

Stegh recounts the record evidence describing his symptoms and asserts that the combination of those symptoms limits his ability to function and complete his activities of daily living. Doc. 9, at 13. Stegh argues that "the ALJ

failed to articulate any supportable rationale for her finding that Stegh's statements and the evidence, as detailed above, were not supportive of the fact that he would be precluded from all types of work." *Id*. "This failure," Stegh continues, "resulted in the ALJ failing to include all non-exertional functional limitations imposed by his pain and need for frequent bathroom breaks due to his Crohn's." *Id*.

The ALJ "articulate[d] … supportable rationale" when explaining why Stegh could perform work despite Stegh's allegations to the contrary. The ALJ cited the relevant legal authority, 20 C.F.R. 404.1529, *How we evaluate symptoms, including pain*, and Social Security Ruling 16-3p, *Evaluation of symptoms in disability claims*. Tr. 21, 22. The ALJ detailed Stegh's allegations contained in Stegh's disability report and pain questionnaire and Stegh's testimony at the hearing. Tr. 22. The ALJ stated that Stegh's alleged functional limitations were "inconsistent with the medical evidence and other evidence in the record," Tr. 22, and discussed that evidence, including Stegh's Crohn's disease, Tr. 23–25. The ALJ concluded,

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not entirely consistent with the claimant's reported daily functioning, examination findings of record, and the weighted portions of the medical opinions. The undersigned notes that while the record shows the claimant experiences symptoms from his conditions, treatment plans during the relevant period were conservative in nature, involving outpatient office visits for medication management, monitoring of his chronic kidney disease and Crohn's disease, imaging, and pain

17

management for his knees, neck, and back (1F; 2F; 4F; 5F; 6F; 8F; 9F; 10F; 13F; 15F). Further, the claimant treated with medications with adjustments as needed and routine follow up appointments with no evidence of deterioration or repeated hospitalizations during the relevant period—with only one inpatient stay for his surgical procedure from April 20-25, 2020 (6F). Overall, the record did not demonstrate extensive or repeated hospitalizations or emergency room visits related to his severe impairments, invasive procedures, or required physician intervention. Therefore, the undersigned concludes that the record does not establish limitations of the level and severity as the claimant alleged and that would preclude all work activity. While the record supports some degree of limitation from the claimant's impairments for the relevant period, the exam findings, imaging, and testing do not support a greater degree of limitation than that which is set forth in the above residual functional capacity assessment.

Tr. 25. Stegh's assertion that the ALJ "failed to articulate any supportable rationale for her finding" about Stegh's allegations of symptoms is belied by the record. Stegh doesn't identify an error in any portion of the ALJ's five-page discussion of the medical evidence or in the ALJ's conclusion.[7]

Stegh contends that the ALJ didn't comply with the requirements of Social Security Ruling 16-3p. Doc. 9, at 14. Under that ruling, the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *4 (March 16, 2016); *see also* 20

---

[7]     Moreover, the case that Stegh relies on in support of his argument was rejected upon review by the district court *before* Stegh's counsel filed his brief. *See* Doc. 9, at 14.

C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). Stegh doesn't state what portion of Social Security Ruling 16-3p he believes the ALJ didn't comply with. The ALJ discussed Stegh's statements, imaging results, daily activities, physical exam findings, treatment, and the opinion evidence. Tr. 23–27. So the ALJ complied with Social Security Ruling 16-3p. *See Hatcher v. Berryhill*, 2019 WL 1382288, at \*15 (N.D. Ohio Mar. 27, 2019) ("The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence") (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005)).

Next, Stegh argues that the ALJ's conclusion—that the opinion from Dr. Bailey, the consultative examiner, was "internally inconsistent"—was "an incorrect finding." Doc. 9, at 16. But Stegh doesn't challenge the ALJ's evaluation of Dr. Bailey's opinion, which identified at least seven reasons why the ALJ discounted Dr. Bailey's opinion and highlighted internal inconsistencies between Dr. Bailey's assessed limitations and Dr. Bailey's

19

physical exam findings.[8] Tr. 26–27. Stegh complains about the ALJ's treatment of the state agency reviewers' opinions, Doc. 9, at 16, but it's not clear why. Indeed, the ALJ found that Stegh was *more* limited than the state agency reviewers found. Tr. 25–26. As a result, the ALJ included additional restrictions in the RFC. Tr. 26. In any event, Stegh doesn't identify an error the ALJ made when evaluating the state agency reviewers' opinions.

Finally, because the ALJ's RFC is supported by substantial evidence, Stegh's challenge to the vocational expert's answer to the ALJ's hypothetical question—a challenge based on the ALJ's RFC assessment—also necessarily fails. Doc. 9, at 16–17. The ALJ's decision should be affirmed.

---

[8]     The ALJ wrote that Dr. Bailey: used a check-box form; said that Stegh could lift over 15 pounds but also said that Stegh could never lift more than 10 pounds; provided no explanation or citation to objective findings in support of the standing, walking, and sitting limitations; opined that Stegh had left shoulder limitations that were more severe than those caused by Stegh's right shoulder when Dr. Bailey's exam findings showed that Stegh's right shoulder function was more limited than Stegh's left shoulder; commented that Stegh gave poor effort throughout the exam; remarked that Stegh's "medical conditions seem well controlled on current medications and there are no acute symptoms that would suggest otherwise"; and cited nothing to support his finding that Stegh needed exposure restrictions for heat, cold, humidity, pulmonary irritants, and vibrations. Tr. 26–27.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: May 1, 2023

> /s/ James E. Grimes Jr.
> James E. Grimes Jr.
> U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).